UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| KATHERYN GIOVANNI,<br><br>  Plaintiff,<br>    v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION, an FDIC insured corporation and DOES 1 through 100, inclusive,<br><br>  Defendants.<br>_____/ | No. C 12-02530 LB<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[ECF No. 33] |

## INTRODUCTION

Plaintiff Katheryn Giovanni alleges that Bank of America, N.A. ("BOA") inaccurately informed credit reporting agencies that she had overdue payments on her credit account after those debts had been discharged through bankruptcy and refused to correct its inaccurate reports. Giovanni alleges three claims against BOA for violations of (1) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), (2) California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a), and (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. The court finds the matter suitable for determination without oral argument, vacates the April 18, 2013 hearing, and **GRANTS** BOA's motion to dismiss.

## STATEMENT

### I. FACTUAL BACKGROUND

Plaintiff, Katheryn Giovanni currently resides in Chatham County, Georgia, but lived in

California during the relevant times in the complaint. Second Amended Complaint ("SAC"), ECF No. 30, ¶¶ 3, 6.[1] Defendant, Bank of America, N.A. is a national bank based in Charlotte, North Carolina. *Id.* ¶ 7.

On September 30, 2010, Giovanni filed a voluntary Chapter 7 bankruptcy petition (the "Petition") in the United States Bankruptcy Court for the District of Oregon. *Id.* ¶ 12. Schedule F of the Petition listed an unsecured debt of $5,500.00 in BOA's favor. *Id.* ¶ 13. Giovanni was current on payments to BOA through September 2010. *Id.* ¶ 18.

On January 5, 2011, Giovanni's dischargeable debts were discharged pursuant to 11 U.S.C. § 727. *Id.* ¶ 14. The discharge order related back to when Giovanni filed for bankruptcy. *Id.* ¶ 21. BOA was notified of the discharge the next day. *Id.* ¶ 14. Giovanni never entered a re-affirmation agreement with BOA during her bankruptcy and she argues that the discharge, therefore, included the BOA debt. *Id.*

On August 24, 2011, Giovanni received credit reports from Experian, Transunion, and Equifax, the three credit reporting agencies ("CRAs"). *See Id.* ¶¶ 1, 15. The reports indicated that BOA reported to all three CRAs that there were overdue payments on Giovanni's credit account in October and November 2010 and a "charge off" notation in December 2010. *Id.* ¶ 15.

On September 6, 2011, Giovanni sent written notice to the CRAs requesting "a formal, full, and complete" investigation of her account and disputing BOA's reported overdue payments and the "charge off" notation. *Id.* ¶ 16. The only time overdue payments are reported is when the account is in a collectable status. *Id.* ¶ 17. Because she filed for bankruptcy in September 2010, the account was no longer collectable in October and November 2010, and thus BOA's reporting of overdue payments in October and November 2010 was inaccurate. *Id.* She was current in her payments in September 2010 when she filed for bankruptcy. *Id.* (The argument in the complaint is that the automatic stay operated as a freeze of the status quo, and Giovanni was never "late" after she filed for bankruptcy in September 2010. *Id.*)

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

On September 15, 2011, Giovanni received Transunion's reinvestigation report, which stated that BOA corrected and removed the disputed overdue payments and the "charge off" notation. *Id.* ¶ 22.

### A. The Experian Credit Report

On October 7, 2011, Giovanni received Experian's reinvestigation report (the "Credit Report"), which stated that BOA continued reporting overdue payments in October and November 2010. *Id.* ¶ 23. Under the account balances section, the report indicates that BOA reported a "0" balance from October 2010 through March 2011. *Id.* ¶ 23. BOA refuses to correct Giovanni's Experian credit report despite being noticed of the bankruptcy and the inaccurate reporting. *Id.* ¶ 24.

The parties submitted barely-legible pages three and four of the Credit Report.[2] *See, e.g.,* BOA's Request for Judicial Notice, ECF No. 34-1 at 23; Gale Decl. Ex. B, ECF No. 37 at 9-10; Reply Ex. A, ECF No. 38 at 13-14. The Credit Report is dated October 7, 2011 but the date of status of Giovanni's account is January 2011. *See* Credit Report, ECF No. 37 at 9.

Until August 2010, the "payment history" is listed as "ok." From August to November 2010, the account was reported as 30, 60, 90, and 120 days past due, respectively. *Id.* The Credit Report also indicates that there was a "Charge off" in December 2010. *Id.*

Under "Account History," the Credit Report shows an account balance of over $5,000[3] from July through September 2010 and an account balance of 0 from October to December 2010 and in March 2011. *Id.* at 10. The "Date payment received" for each of these months is May 25 or 26. The Credit Report also notes "Discharged through Bankruptcy Chapter 7. This account is scheduled to continue on record until Aug 2017." *Id.* And under "Account History," it states "Debt included in Chapter 7 Bankruptcy on Jan 05, 2011." *Id.*

### B. Credit Reporting Practices

BOA subscribes to the "Metro 2 Format" for credit reporting to CRAs. *Id.* ¶ 20. The Consumer

---

[2] As discussed below, the court grants the parties' request for judicial notice of the credit report pages. The court cites to the most legible copy of the credit report, ECF No. 37 at 9-10.

[3] The precise number is illegible, but the parties do not dispute the number.

1  Data Industry Association ("CDIA") instructs creditors under the Metro 2 Format on how to
2  accurately report credit information during a Chapter 7 bankruptcy proceeding. *Id.* The CDIA
3  instructs credit furnishers to "report the value indicator 'D' or 'no data' in the payment history
4  section during a bankruptcy." *Id.* The CDIA also instructs credit furnishers to "report the status of
5  the account at the time of the petition." *Id.*

6  Giovanni alleges that BOA knowingly and intentionally disregarded CDIA's instructions by
7  reporting the overdue payments and the account status as "charged off" after she filed for
8  bankruptcy. *Id.* Again, overdue payments are only reported when an account is "in a collectable
9  status." *Id.* ¶ 17.

## II. PROCEDURAL HISTORY

11  Giovanni sued BOA in state court, asserting nine federal and state claims. *See* Complaint, ECF
12  No. 1-2 at 9. BOA answered the complaint and removed it. Notice of Removal Ex. A, ECF No. 1 at
13  6. The parties stipulated to Giovanni's filing a First Amended Complaint ("FAC"). *See* FAC, ECF
14  No. 18; Stipulation to Amend Plaintiff's Complaint, ECF No. 17. The FAC alleged that BOA
15  violated the FCRA, CCRAA, and the UCL, by reporting overdue payments on her account during
16  her bankruptcy stay and refusing to alter that information not removing allegedly inaccurate
17  information from Giovanni's Experian credit report. *See* FAC, ECF No. 18, ¶¶ 15, 18.

18  On December 18, 2012, the court granted BOA's motion to dismiss with leave to amend on the
19  following grounds. First, the court rejected Giovanni's arguments that reporting late payments on
20  debts during the pendency of a bankruptcy petition violates either the FCRA or the automatic
21  bankruptcy stay 11 U.S.C. § 352(a). Order, ECF No. 28 at 8-9. Second, the court rejected the
22  related argument that BOA's reporting derogatory credit information during Giovanni's bankruptcy
23  stay inaccurately "indicate[d] that the account is in active status and subject to collection." *Id.* at 9.
24  Such allegations would were not actionable because they were not likely to have an adverse affect
25  on Giovanni. *Id.* Finally, the court rejected Giovanni's argument that BOA was liable for "re-
26  reporting" that late payment information after discharge. *Id.* This allegation "appear[ed] to be
27  nothing more than another way of saying that BOA refused to alter the information it reported." *Id.*
28  Because the reported information was accurate, liability could not attach. *Id.* at 9-10. The court

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

gave Giovanni 21 days to file an amended complaint. *Id.* at 12.

Giovanni filed the SAC on January 4, 2013. As before, she asserts claims under the Fair Credit Reporting Act, California's Consumer Credit Reporting Agencies Act, and the unlawful prong of California's Unfair Competition Law. SAC ¶¶ 28-55; *cf.* FAC ¶¶ 42-49 (FAC also stated a UCL claim under the unfair prong). She seeks the following relief: (1) preliminary and permanent injunctive relief; (2) $10,000 in statutory and actual damages under 15 U.S.C. § 1681n and Cal. Bus. & Prof. Code § 17206; (3) a $2,500 civil penalty under Cal. Bus. & Prof. Code § 17206; (4) determinations by the court that BOA's "policies and practices" are unlawful, willful, and negligent under 15 U.S.C. §§ 1681n, 1681o, and the UCL; (5) punitive damages; and (6) attorney's fees and costs. SAC at 10.

On February 15, 2013, BOA filed a motion to dismiss the complaint. Motion, ECF No. 33.

**ANALYSIS**

**I. REQUESTS FOR JUDICIAL NOTICE[4]**

**A. BOA'S Request for Judicial Notice**

Giovanni attached exhibits to her original complaint, and BOA asks the court to take judicial notice of page 3 of Giovanni's October 7, 2011 Experian credit card report. *See* BOA's Request for Judicial Notice, ECF No. 34 at 1. Giovanni does not object so long as the court also takes notice of page 4. *See* Opp'n, ECF No. 35 at 14, n.17; Gale Decl., ECF No. 37 at 2, 9-10. BOA does not object to this. Under the circumstances, the court takes judicial notice of both pages. *See United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011) (court may "consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.").

BOA also asks the court to take judicial notice of the credit card statements attached to the original complaint "because the content of the statements–Plaintiff's payment status–is alleged" in

---

[4] Both parties filed requests for judicial notice of recent decisions. Civil Local Rule 7-3(d)(2) permits the parties to file statements of recent decisions, and the court construes the requests as statements of recent decision.

1 the SAC. BOA's RJN, ECF No. 34 at 3. The content relates to the allegations, but the documents
2 are not central to the claims. *See Corinthian Colleges*, 655 F.3d at 998-99. Giovanni also appears to
3 object to their consideration. *See* Opp'n, ECF No. 35 at 13-14 ("Defendant goes well beyond the
4 pleadings" in referencing the statements). They are not necessary to the court's holding, and the
5 court denies the request.

### B. Giovanni's Requests for Judicial Notice

In her opposition, Giovanni cites Consumer Data Industry Association's 2011 Credit Reporting Resource Guide and attests by declaration to its authenticity. *See* Gale Decl., ECF No. 37 & Ex. A. As with the credit card account statements, the document is not central to Giovanni's claim even if some of the topics it addresses relate to allegations in the FAC.

On March 29, 2013, three weeks after the reply brief was filed, Giovanni filed a late Request for Judicial Notice. *See* Docket; N.D. Cal. Civil L.R. 7-3(d). It was late, the documents do not change the outcome, and the court denies the RJN.

### II. MOTION TO DISMISS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus,* 551

1  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). In
2  addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc.*
3  *v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). However, the court need not
4  accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.
5  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

6  If the court dismisses the complaint, it should grant leave to amend even if no request to amend
7  is made "unless it determines that the pleading could not possibly be cured by the allegation of other
8  facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*
9  *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party
10 repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See*
11 *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where
12 district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim
13 with leave to amend).

14 BOA argues that its reporting was accurate and that Giovanni lacks standing to bring a UCL
15 claim.

16 **A.  The Fair Credit Reporting Act Claim**

17 The FCRA was enacted to ensure that CRAs adopt reasonable procedures so that consumers are
18 treated fairly and equitably. 15 U.S.C. § 1681. FCRA Section 1681s–2 imposes duties on those
19 who furnish information to CRAs to help achieve the FCRA's purpose. 15 U.S.C. 1681s–2. FCRA
20 Section 1681s-2(a) bars such furnishers from reporting information they know or have reasonable
21 cause to believe is inaccurate. 15 U.S.C. § 1681s-2(a)(1)(A). Section 1681s-2(a) is not privately
22 enforceable. *Nelson v. Chase Manhattan Mortgage Corp*, 282 F.3d 1057, 1059-60 (9th Cir. 2002).

23 There is a private right of action to enforce section 1681s-2(b), however. *Id.*; *see* 15 U.S.C.
24 §§ 1681n, 1681o. That provision requires furnishers who receive notice that a consumer disputes
25 information on a credit report to conduct an investigation, report the results of the investigation to
26 the CRA, and, if the information is found to be inaccurate or incomplete, to make appropriate
27 corrections. 15 U.S.C. § 1681s-2(b). The reported information is "inaccurate or incomplete" within
28 the meaning of the statute if it is "patently incorrect, or because it is misleading in such a way and to

such an extent that it can be expected to adversely affect credit decisions." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

In *Gorman*, the Ninth Circuit held that the reporting obligation under section 1681s-2(b) also includes an obligation to report to the CRAs the fact the consumer disputed particular information. *Id.* If the consumer's dispute is meritless, however, the furnisher will not be held liable for failing to report it "because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading. It is the failure to report a bona fide dispute . . . that gives rise to a furnisher's liability under § 1681s-2(b). *Id.*

### *1. Reporting a Debt During the Pendency of A Bankruptcy Proceeding*

BOA moves to dismiss to the extent Giovanni's claims are premised on BOA's reporting delinquent payments while her bankruptcy petition was pending. Mot. at 12-14. The court previously dismissed Giovanni's claims on this basis and does so again here for the same reasons. *See* Order, ECF No. 28 at 8. As discussed in the last order, this argument has been rejected by several other courts in this district. *See, e.g., Mortimer v. Bank of America, N.A.*, No. C-12-01959 JCS, 2013 WL 1501452, at *9 (N.D. Cal. April 10, 2013); *id.*, 2013 WL 57856 (N.D. Cal. Jan. 3, 2013); *Harrold v. Experian Information Solutions, Inc.*, No. C 12-02987 WHA, 2012 WL 4097708, at *4 (N.D. Cal. Sep. 17, 2012)*; Mortimer v. JP Morgan Chase Bank, National Association*, No. C 12-1936 CW, 2012 WL 3155563 (N.D. Cal. Aug. 2, 2012) ("While it might be good policy . . . to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code nor the FCRA does so.").

Giovanni's only new argument is that BOA did not comply with CDIA instructions in reporting her late payments. Giovanni argues that under the Metro 2 Format, "while an account is in bankruptcy, the proper notation in the payment history section of the report is the indicator 'D.'" Opp'n at 17-18. But the SAC does not allege that BOA was required to follow the Metro 2 Format, the CDIA's instructions on credit reporting, or that deviation from those instructions constitutes an inaccurate or misleading statement. *See* SAC, ¶¶ 20. Accordingly, Giovanni has not alleged that BOA's failure to comply with the CDIA instruction renders its report inaccurate or incomplete. Accordingly, the court grants BOA's motion to dismiss Giovanni's FCRA claim based on reporting

1 Giovanni's overdue payments during the bankruptcy proceedings.

### 2. Giovanni's Relation Back Theory

BOA next moves to dismiss Giovanni's FCRA claim to the extent it is based on the theory that Giovanni's bankruptcy discharge renders the late payment reports retroactively inaccurate. Mot. at 15-16. Giovanni counters that the report is inaccurate because the bankruptcy discharge relates back to the filing date. Thus, she never had an obligation to make the payments BOA reported as overdue. Opp'n at 19-21. The court previously rejected this argument and reaches the same conclusion. *See* Order, ECF No. 28 at 9. Judge Spero recently rejected an identical argument. *See Mortimer v. Bank of Am.*, 2013 WL 57856 (N.D. Cal. Jan. 3, 2013). After thoroughly analyzing the bankruptcy statute, he concluded that discharge:

> does not change the underlying fact that, during the pendency of the bankruptcy, the account was delinquent. *See In re O'Connell*, 2008 WL 5046496, *1. Thus, it is accurate to report, after discharge, that a debtor was delinquent during the pendency of bankruptcy because at that time the debt existed. To avoid presenting a misleading picture, the creditor must also report that the account was discharged through the bankruptcy and the outstanding balance on that account is zero.

*Id.* at *7; *accord Mortimer v. Bank of Am., N.A.*, 2013 WL 1501452, at *10-11 (analyzing additional case law, reaching the same conclusion, and citing the undersigned's previous order dismissing Giovanni's FAC). Judge Spero's reasoning bolsters the court's previous conclusion and the court follows it. Accordingly, the court grants BOA's motion to dismiss Giovanni's FCRA claim under the "relation back" theory.

### 3. Giovanni's Re-Reporting Theory

BOA also moves to dismiss the FCRA claim to the extent it is based on BOA's "re-reporting" the disputed information without notifying Experian that Giovanni disputed it. Mot. at 17-18. The court grants the motion to dismiss because, as in the previous order, "BOA did not report inaccurate or misleading information." Order, ECF No. 28 at 9.

### 4. Simultaneously Reporting Overdue Payment Notations and a Zero Past Due Balance

Giovanni's only new theory of liability is that BOA reported inconsistent information to Experian and that "inconsistent credit reporting is inaccurate under the FCRA." Opp'n, ECF No. 35 at 12-14. The key allegations are that BOA reported overdue payments in October and November

2010 and a "charge off" in December 2010, and simultaneously reported "an outstanding balance of zero from October 2010 through March 2011." Opp'n, ECF No. 35 at 13. BOA argues that there is nothing inaccurate here.

Giovanni's theory is unpersuasive. The court assumes for the purposes of this motion that the "zero balance" notation is inconsistent with the "overdue payment" and "charge off" notations. An internally inconsistent report, however, does not establish an FCRA violation. FCRA liability attaches only if the inaccuracy is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163.

None of these alleged misrepresentations are patently incorrect or materially misleading.

First, Giovanni does not contend that the "zero balance" notation is incorrect, and it would not adversely affect credit decisions if it were.

Second, Giovanni has not established that the "overdue payment" notation is incorrect. It is undisputed that she owed money to BOA when she filed for bankruptcy and that she had an obligation to make payments up until she did. *See* Opp'n at 18 ("Plaintiff is not contesting the existence of the prepetition debt."). Giovanni does not allege that she made payments while her bankruptcy petition was pending and nothing in the record supports such an allegation.[5] And the court has rejected all of Giovanni's other theories that the overdue payments notation is wrong. Accordingly, the Giovanni fails to state a claim on this basis.

Finally, the "charge off" notation does not support liability, either. The facts are that Giovanni owed money, she filed for bankruptcy, and stopped making payments. Before her bankruptcy was discharged, BOA "charged off" the balance due. Except for the theories rejected above, Giovanni does not explain what is inaccurate here.

Giovanni argues that this court should be guided by *Grantham v. Bank of America, N.A.*, a case involving the same attorneys as this matter making nearly identical arguments. No. CV12-1960 MEJ, 2012 WL 5904729 (N.D. Cal. Nov. 26, 2012). Giovanni suggests that the court in *Grantham*

---

[5] Giovanni argues that the SAC makes such allegations, but she is incorrect. *Compare* Opp'n at 8:11-14; 24:15-19, *with* SAC, *passim*.

1  held that the inconsistency allegation "plausibly stated a factual inaccuracy to support an FCRA
2  claim." Opp'n at 13.  Giovanni misstates that court's reasoning.  It was not the inconsistency itself
3  that supported liability in *Grantham*.  Instead, it was the overdue payment report, which the court
4  noted was "adverse information."  2012 WL 5904729, at *3; *cf. Mortimer*, 2013 WL 1501452, at
5  *12 (distinguishing *Grantham* because any inconsistency between the $0 balance and late payment
6  notations did not render the latter inaccurate under the FCRA when debt existed during pendency of
7  bankruptcy and no payments were made).  Here, the court has already rejected all of Giovanni's
8  arguments that are predicated on overdue payments.  Accordingly, the court grants BOA's motion to
9  dismiss the claim on this theory.

**B.  The California Consumer Credit Reporting Act Claim**

Giovanni alleges a CCRAA claim under section 1785.25(a), which states, "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."  Unlike the FCRA, the CCRAA includes a private right of action to directly enforce the prohibition against supplying incomplete or inaccurate consumer credit information.  Cal. Civ. Code § 1785.25(g) ("A person who furnishes information to a consumer credit reporting agency is liable for failure to comply with this section, unless the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, the furnisher maintained reasonable procedures to comply with those provisions.").

Except for their standing provisions, the FCRA and CCRAA are substantially similar.  The CCRAA's requirements of completeness and accuracy mirror those found in the FCRA.  Thus cases decided under the FCRA are "persuasive authority and entitled to substantial weight when interpreting the California provisions."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (internal quotation marks and citation omitted).

As with regard to the FAC, the parties CCRAA arguments mirror their FCRA positions.  Neither suggests the court should reach a different result than on the FCRA claim.  Accordingly, the court applies the same reasoning and GRANTS the motion to dismiss Giovanni's CCRAA claim.

**C. The Unfair Competition Law Claim**

Giovanni's third claim is for violation of California's Unfair Competition Law. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). To support a claim for a violation of the UCL, a plaintiff cannot simply rely on general common law principles. *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004).

The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003).

Any individual who has "has suffered injury in fact and has lost money or property as a result of the unfair competition" may initiate suit. Cal. Bus. & Prof. Code § 17204. To have standing, a plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted)

Giovanni alleges a claim under the UCL's "unlawful" prong. *See* SAC, ECF No. 30, ¶¶ 51-53. Because Giovanni has not pleaded a violation of any other laws, her "unlawful" prong claim fails. Accordingly, the court dismisses Giovanni's UCL claim. The court need not reach the question of whether Giovanni has sufficiently alleged standing under the UCL.

## CONCLUSION

For the reasons stated above, the court **GRANTS** BOA's motion to dismiss Giovanni's FCRA, CCRAA, and UCL claims. Giovanni's claims based on the premise that it was inaccurate for BOA

to report late payments while her bankruptcy petition was pending are dismissed **WITH PREJUDICE**. Otherwise, Giovanni's claims are dismissed with leave to amend within 21 days of the date of this order.

This disposes of ECF No. 33.

**IT IS SO ORDERED.**

Dated: April 17, 2013

_____
LAUREL BEELER
United States Magistrate Judge